UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

NICHOLAS A. GREEN,                    )
          Plaintiff,                )
                              )
     vs.                                    )        1:08-cv-0163-LJM-TAB
                              )
FORD MOTOR COMPANY,                    )
          Defendant.               )

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on Defendant's, Ford Motor Company ("Ford"), Motion to Dismiss for Spoliation of evidence.  Plaintiff, Nicholas A. Green ("Green"), was involved in a single car rollover accident that left him paralyzed.  Green seeks damages from Ford for the allegedly defective design of his automobile.  Ford argues in its motion that Green should be prevented from asserting its claim, however, because Green allowed the automobile to be destroyed, thus preventing Ford from inspecting it for evidence necessary to support its defenses and to refute Green's claims.  For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss.

## I. BACKGROUND

On January 24, 2006, Green, the driver of a 1999 Ford Explorer Sport ("Explorer"), was involved in a single car accident in which he left the traveled portion of the road, struck the end of a guard rail, and rolled down an embankment, eventually coming to rest upside down in a ditch.  Compl. at ¶ 1.  Green sustained injuries and damages from the accident including quadriplegia, expenses for medical treatment, lost income, and mental pain and

anguish.  *Id.* at ¶ 8.  Green filed suit against Ford on January 22, 2008, alleging that Ford defectively designed the Explorer such that it is more susceptible to rollover than is reasonable.  *Id.* at ¶¶ 2, 3, 11.   In his brief opposing Ford's Motion to Dismiss, Green further argues that despite knowing that the Explorer was more susceptible to rollover, Ford did not perform the testing necessary to determine how to best restrain occupants in rollover collisions.  Green Resp. in Opp. to Mot. to Dismiss, at 3 ("Green Resp.").

At the time of the accident, Green was unemployed and had no healthcare insurance coverage besides Indiana Medicare.  Green Aff. at ¶ 5.  As a result of his injuries, Green is unable to drive any vehicle unless it is specially fitted to accommodate someone with quadriplegia.  *Id.* at 6.  He cannot afford to purchase such a vehicle or modify one not already fitted.  *Id.*

Green has not had possession of his Explorer since his injury.  *Id.* at 7.  Green stated that he lacked both the ability and the financial resources to purchase his wrecked vehicle and have it stored.  *Id.* at 8.  As a result, the Explorer had been kept at Hix Wrecker Service ("Hix") in Indianapolis until it was sold for scrap metal by Hix shortly before this suit was filed.  Pl's. Initial Disclosures at 2 ("Disclosures").  Green states that he was not aware that the vehicle had been destroyed until he was informed by his attorney that it had been. Green Aff. at ¶ 9.

Prior to the destruction of the Explorer, television news crews filmed the Explorer at the accident site, and digital photographs were taken of the vehicle.  Ford Br. in Support of Mot. to Dismiss, at 8 ("Ford Br.").  These videos and photographs were provided to Ford.

2

Disclosures at 1-2.  Additionally, Green had the opportunity to inspect the Explorer before it was destroyed.  Ford Reply in Support of Mot. to Dismiss, at 6 ("Ford Reply").

Ford claims that the destruction of the Explorer prior to the trial resulted in spoliation of the evidence.  Ford Br. at 2.  Ford argues that as a result of the spoliation it has been irreparably harmed because it will not be able to adequately investigate the Explorer to gather evidence that might support its defenses or to show other possible causes for Green's injuries besides design defect.  *Id.* at 3.  Ford further argues that Green should be held responsible for spoliation because he knew that the Explorer was relevant to the lawsuit he was preparing to bring, and because he was able to preserve the Explorer for a period of nearly two years prior to filing the suit.  Ford Reply, at 5-6.  Ford also contends that the availability of photographs and video of the Explorer do not remedy the irreparable harms it will suffer if the case is not dismissed, because these images are not sufficient to determine the cause of Green's injury.  Ford Br. at 8-9.

Green argues that Ford has sufficient evidence because his claim is based on manufacturer defect and not on the specific Explorer that was involved in the accident.  Green Resp. at 12.  Thus, regardless of whether the Explorer itself exists, the defective manufacturing process still exists and, as such, Ford has all the evidence it needs at its disposal in order to defend against the claim.  *Id.*  Additionally, Green argues that he did not intentionally destroy the Explorer, so even if it was relevant to Ford's defense, he should not be sanctioned for spoliation.  *Id.* at 11.  Finally, Green argues that videotapes and photographs provide Ford with enough evidence to conduct any analyses of the specific accident.  *Id.* at 12.

## II. <u>DISCUSSION</u>

In order to properly analyze Ford's Motion to Dismiss, the Court must address three issues.  First, the Court must determine whether the Explorer itself is evidence necessary to the determination of Green's claim.  *See Greco v. Ford Motor Co.*, 937 F. Supp. 810, 814 (S.D. Ind. 1996).   If Ford can adequately defend against Green's suit without being able to inspect the Explorer, then the Motion to Dismiss must be denied.  *See id.* at 814-16.  Second, if the Explorer is relevant to Ford's defense, the Court must then determine if Green is responsible for spoliation of the evidence.  *See Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000).   Third, if Green is responsible for spoliation of the Explorer, the Court must determine the proper sanction to apply in the case.  *See Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 351 (Ind. 2005).

.

### A. NECESSITY OF THE EXPLORER TO FORD'S DEFENSE

In Indiana, a products liability plaintiff must show: "(1) the seller, (2) put into the stream of commerce, (3) a product in defective condition unreasonably dangerous, and (4) that was the proximate cause of plaintiff's injuries."  *Greco*, 937 F. Supp. at 816 (citing *Underly v. Advance Mach. Co.*, 605 N.E.2d 1186, 1189 (Ind. App. 1993)).  Green and Ford describe Green's claim as a "crashworthieness" claim, which in Indiana is often referred to as an "enhanced injury" claim.  *See Miller v. Todd* 551 N.E.2d 1139, 1142 (Ind. 1990).  The plaintiff in an enhanced injury case must prove that "after the original impact or collision the defectively designed product proximately caused (i.e. enhanced) the injuries that resulted."  *Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1032 (Ind. Ct. App. 2003)

4

(quoting *Jackson v. Warrum*, 535 N.E.2d 1207, 1220 (Ind. Ct. App. 1989)).  This doctrine expands the proximate cause requirement, extending a manufacturer's liability to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury.  *See Jackson*, 535 N.E.2d at 1213.  Under Indiana products liability law, the trier of fact must examine both the fault of the person suffering the harm and the fault of the people who caused or contributed to the harm in assessing the percentage of fault in a given case.  Ind. Code § 34-20-8-1.

Green contends that Indiana case law prevents the Court from assessing sanctions for spoliation in a product design case, because "[n]o prejudice would exist in a design defect case because the design itself, and not the alleged defect in the original product, would be the focus of the case."  *Columbian Rope Co. v. Todd*, 631 N.E.2d 941, 945 (Ind. Ct. App. 1994) (citing *Headley  v. Chrysler Motor Corp.*, 141 F.R.D. 362, 366 n.18 (D. Mass. 1991)).  *Columbian Rope* concerned a defective warning regarding a piece of rope rather than a defective design of that rope.  *Id.* at 942.  However, the rope manufacturer in that case claimed that it was prejudiced into a battle of uninformed experts by the plaintiff's loss of the original product.  *Id.*  To support this contention, the rope manufacturer cited *Headley v. Chrysler Motor Corp.,* wherein a federal district court excluded any an all expert evidence in a product defect action where plaintiff destroyed the subject automobile.  *See  generally Headley*, 141 F.R.D. 362.  The *Columbian  Rope* court followed the reasoning of *Headley* but ultimately rejected the defendant's prejudice arguments because the focus of the case was "not on the defects in the original rope but on the inadequacy of

the warnings to alert [plaintiff] of the [] rope's limitations. . . . " *Colombian Rope*, 631 N.E.2d at 945.

Ford argues that the Explorer is central to its defense and without it Ford might be deprived of the ability to adequately defend against Green's (and other potential plaintiffs' suits). *See, e.g. Pries v. Honda Motor Co., Ltd.*, 31 F. 3d 543, 544 (7th Cir. 1994) ("The car itself may be the best witness about the conditions at the time of the accident. Strong forces leave telltale signs in physical objects, signs that can be read by people who know what to look for and have the right instruments.") The problem with Ford's argument, however, is that allegations of a product or manufacturing defect differ from those alleging design defects. *See Greco v. Ford Motor Co.*, 937 F. Supp. 810, 814 (S.D. Ind. 1996); *Allstate Ins. Co. v. Sunbeam*, 53 F. 3d 804, 806-07 (7th Cir. 1995). The difference is that "a design defect, if it exists, is a constant that is unaffected by the accident equation." *Greco,* 937 F. Supp. at 814; *See also Marrocco v. General Motors Corp.*, 966 F. 2d 220, 225 (7th Cir. 1992) ("The plaintiffs had originally sought recovery under the theory of design defect, and thus, the [product] did not necessarily have to be produced."). As the court in *Headley* explained,

> "If [this] were [a design defect case], it might well be that the destruction of the vehicle, including the seat belt in issue, could cause no prejudice to the defendant, for the simple reason that the issue would focus on the design itself-which was not destroyed- and not the particular seat belt in plaintiffs' vehicle."

*Headley*, 141 F.R.D. at 366 n.18.

The Court concludes that the Explorer itself is not necessary in order for Ford to conduct its defense. The allegedly defective design of the Explorer was not destroyed with

Green's Explorer.  Ford and Green have access to other evidence regarding the design of the Explorer, such as schematics, expert testimony, and testing.  Furthermore, video and photographs demonstrating the position of the Explorer after the accident have been made available to Ford.  While it would be ideal for Ford to be able to examine the specific vehicle involved in the crash, the law does not necessitate such an examination in a design defect case.

The same is true of Green's allegations regarding the allegedly defective seatbelt system.  Ford argues that it needs to see the actual Explorer in order to determine if Green was properly using the seat belt.  This is not the case, however, because the design of the seatbelt system still exists, and Ford has sufficient methods available by which it can assert defenses to its liability.  For example, Ford could defend against Green's claim by comparing Green's injuries to those that might be typically expected to occur in a similar wreck.  If Green's injuries differed from what experts, tests, or observations would suggest should be the case, then a jury may decide to hold Green responsible for some or all of the damages he incurred.  Ford could also use numerous other sources, such as testing, expert testimony, and observations at the scene of the crash to determine whether the system was responsible for Green's injuries.  Therefore, because the allegedly defective designs still exist, and there are sources by which the parties can ascertain whether those defects are responsible for Green's injuries, the trier of fact has sufficient evidence to apportion fault between the parties despite the destruction of the Explorer.

## B. SPOLIATION

Although the Explorer is not necessary in order for Ford to conduct its defense, the Court still has the authority to sanction Green for allowing the Explorer to be destroyed. As such, the Court must determine whether Green's conduct constituted spoliation of evidence. Spoliation consists of the "intentional destruction, mutilation, alteration, or concealment of evidence. [I]f proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible." BLACKS LAW DICTIONARY 1409 (7th ed. 1999). "In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it." *Cahoon*, 734 N.E.2d at 545 (quoting *Porter v. Irvin's Interstate Brick & Block Co.*, 691 N.E.2d 1363, 1364-65 (Ind. Ct. App. 1998)).

The Court's power to sanction spoliation is derived from its broad and inherent discretionary powers to issue evidentiary rulings and to manage the orderly and expeditious disposition of cases. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Remedies available to address a party's spoliation of evidence include dismissal of a claim, entry of default judgment against the culpable party, exclusion of testimony or other evidence regarding the destroyed evidence, or giving a spoliation or adverse inference instruction to the jury. *See Gribben*, 824 N.E.2d at 351.

The Court concludes that Green is not subject to sanctions for spoliation of the evidence because two portions of the spoliation requirements are not met. First, Green did not have exclusive possession of the Explorer's design. Ford and Green both have

8

access to numerous sources for determining whether the Explorer's design was defective. An examination of the specific Explorer in question is essentially irrelevant to the issue of whether it, and the thousands of others like it, were designed improperly.  Therefore, the destruction of the Explorer does not prejudice Ford.

Furthermore, Green did not intentionally destroy the evidence, nor did gross negligence result in the destruction of the Explorer.  Although it is true that Green kept the Explorer at Hix's lot for a period of time prior to the suit, and it is also true that Green had the Explorer investigated, Ford is not unduly prejudiced, because this case does not "present a situation where Plaintiffs' expert has the benefit of insight now unavailable to Ford's experts.  From the outside it appears the parties are on equal footing" since neither party has gained or lost any evidence crucial to determining whether the Explorer was defectively designed.  *Greco*, 937 F. Supp. at 814.

As the above discussion indicates, no sanctions are appropriate at this stage.  The Explorer is not necessary for Ford to defend against Green's allegations of design defect, and Green's behavior does not rise to the level required to impose a sanction for spoliation.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** defendant's, Ford Motor Co.,

Motion to Dismiss the case for spoliation of the evidence.

IT IS SO ORDERED this 25th day of November, 2008.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

James O. McDonald
EVERETT EVERETT & McDONALD
jameso@mcdonaldlawoffice.com

David Vaughan Scott Sr.
SCOTT, FORREST & BOURNE
dave@davescott.us

Todd Andrew Croftchik
LOCKE REYNOLDS LLP
tcroftchik@locke.com

Randall R. Riggs
LOCKE REYNOLDS LLP
rriggs@locke.com

Kevin C. Schiferl
LOCKE REYNOLDS LLP
kschiferl@locke.com