UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NICHOLAS A. GREEN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-0163-LJM-TAB |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
|     Defendant. | ) | |

## ENTRY ON PRETRIAL MOTIONS

This matter is set for trial on Monday, May 17, 2010. On January 24, 2006, plaintiff, Nicholas A. Green ("Green" or "Plaintiff"), was driving a 1999 Ford Explorer Sport (the "1999 Explorer") on Interstate 65 in Indianapolis when he left the traveled portion of the road, struck the end of a guard rail, and rolled down an embankment. Green was rendered a quadriplegic as a result of this accident. The primary issue in this case is the extent to which the seat belt system in the 1999 Explorer could reasonably be expected to protect occupants in a rollover. Green claims that the 1999 Explorer, which was manufactured by defendant, Ford Motor Company ("Ford" or "Defendant"), was defective and unreasonably dangerous, and that Ford was negligent in its design of the restraint system. Ford denies any negligence on its part and further denies that the 1999 Explorer was defective and unreasonably dangerous. Pending before the Court are several pretrial motions addressing the admissibility of certain evidence, including expert testimony. In addition, Ford has renewed its Motion to Dismiss. The Court considers each motion in turn.

## I. FORD'S RENEWED MOTION TO DISMISS

Ford has renewed its Motion to Dismiss regarding Green's alleged spoliation of evidence. On November 25, 2008, the Court considered and denied Ford's first Motion to Dismiss. Ford's renewed motion fails to provide the Court adequate reasons to disturb that ruling. Therefore, for the reasons stated in the Court's November 25, 2008, ruling, incorporated herein by reference, Ford's Renewed Motion to Dismiss is **DENIED**.

## II. FORD'S MOTION TO DISQUALIFY OR, ALTERNATIVELY, TO EXCLUDE TESTING CONDUCTED BY PLAINTIFF'S COUNSEL

In an attempt to demonstrate that Green's injuries could have been avoided with the use of alternative designs, counsel for Green arranged and performed tests on exemplar vehicles. The parties' pleadings are not altogether consistent with respect to the number and dates of each of Plaintiff's counsels' tests. On one occasion, Plaintiff's counsel performed a test on an alternative design for a restraint system by using a 1997 Chrysler Sebring seat attached to a white 1999 Ford Explorer Sport 4 X 4 2-door (the "White Explorer"). Plaintiff's counsel placed the White Explorer at the top of an embankment and used a Bobcat loader to lift one side of the White Explorer until it tipped over and rolled down the embankment. Plaintiff's counsel, David Scott, directly participated in the August 27, 2009, test as a live human surrogate. On another occasion, Plaintiff's counsel attempted a similar test with another 1999 Ford Explorer. During this test, Plaintiff's counsel unsuccessfully tried to utilize a "screw test," which involves taking the vehicle and driving the wheels up one side of a ramp to cause the vehicle to rollover. Apparently the vehicle could not obtain the requisite speed to properly execute this maneuver. Therefore,

Plaintiff's counsel executed another rollover from a stationary position with the use of a fork lift. According to Green, both tests demonstrate that neither "dummy" was "injured" with the use of an alternative design and that, therefore, the tests prove that an alternative design was available to Ford. Ford now moves the Court to exclude evidence of these tests.

The basic issue underlying this motion is whether the tests are relevant to the facts and issues that will be presented to the jury. "As a general rule, the proponent of experiments must establish a foundation for the evidence by demonstrating that the experiments were conducted under the conditions that were similar to those that existed at the time of the accident." *Nachtsheim v. Beech AirCraft Corporation*, 847 F.2d 1261, 1278 (7th Cir. 1988). However, under certain circumstances experiments that do not actually replicate the subject accident may nevertheless be presented to the jury because "[d]emonstrations of experiments used to merely illustrate the principles informing an expert opinion do not require strict adherence to the facts." *Id.*

Here, in an attempt to demonstrate the benefit of Green's proposed alternative designs, his counsel sought with some degree of exactitude to replicate Green's accident. However, based on Green's pleadings, it is clear that counsel was unable to replicate the underlying accident to the extent necessary under *Nachtsheim*. *Id.* Indeed, although Green was traveling at full speed when he veered off the interstate, Green's counsel was unable to get the exemplar Explorers to roll over from a running start. Instead, they commenced the rollover from a stationary position using a forklift. Therefore, the tests are not sufficiently similar to the subject accident and are therefore inadmissible as replications of that accident. *Id.* Moreover, although tests used to demonstrate scientific principles

upon which an expert will rely do not require strict adherence to the facts, counsel's tests are so far removed from the events that actually occurred–for example, the tests do not account for the sheer velocity at which Green's 1999 Explorer was traveling at the time of the accident– that the tests' slight probative value is substantially outweighed by the potential for juror confusion. Fed. R. Evid. 403.

Therefore, Ford's Motion to Exclude Testing Conducted by Plaintiff's Counsel is **GRANTED**. Plaintiff's counsel's testing and its results are hereby **EXCLUDED**. Ford's Motion to Disqualify (Dkt. No. 68) Green's counsel is **DENIED AS MOOT**.

### III. GREEN'S MOTION TO EXCLUDE PORTIONS OF FORD'S EXPERT, JEFFERY PEARSON'S, OPINIONS

Ford's expert, Jeffrey Pearson, intends to testify about, among other things, certain tests performed on a 2003 Ford Ranger. Ford admits that the tests of the 2003 Ford Ranger were not conducted under the conditions that were similar to those that existed at the time of Green's accident. *See Nachtsheim*, 847 F.2d 1261 at 1278. Indeed, throughout this litigation, Ford successfully opposed discovery into Ford Rangers on the basis that those vehicles were dissimilar to the 1999 Explorer. Nevertheless, Ford asserts that the 2003 Ford Ranger testing illustrates scientific principles upon which Pearson will rely to form his opinions at trial. Green moves the Court to exclude the portions of Pearson's opinions derived from the 2003 Ford Ranger testing. Green asserts that Ford should be barred from using the Ford Ranger testing after opposing discovery into the same vehicles.

Green's Motion to Exclude Portions of Ford's Expert, Jeffery Pearson's, Opinions is **GRANTED**. The Court is concerned with the confusion that the Ford Ranger testing will

4

create for the jury.  There are other ways to demonstrate the scientific principles upon which Pearson relies than through the use of testing performed on a Ford product, and Ford admits it could have performed similar tests without the use of the 2003 Ford Ranger. Dkt. No. 90 at 3..  Therefore, the probative value of the Ford Ranger testing is substantially outweighed by the potential that the jury will compare two Ford products and draw conclusions about the adequacy of the 1999 Explorer's restraint system from the comparison.  Therefore, the portions of Pearson's opinions derived from the 2003 Ford Ranger testing, as well as the testing itself, are hereby **EXCLUDED**.

## IV.  FORD'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DENNIS SHANAHAN AND GARY WHITMAN

Green intends to elicit opinions from two experts in his case-in-chief: Dr. Dennis Shanahan ("Dr. Shanahan") and Gary Whitman ("Whitman") (collectively "Green's experts").  Dr. Shanahan is expected to provide his biomechanical analysis of Green's injuries, including the cause of his injuries.  Whitman is expected to testify about the 1999 Explorer's restraint system, Ford's failure to adequately test that system, and potential alternative designs.  Ford moves the Court to exclude the expert testimony of Green's experts under Federal Rules of Evidence 702 ("Rule 702") and *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993).

Rule 702 permits the admission of expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; *see U.S. v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). This Court must act as a gatekeeper to ensure that the proffered testimony is both relevant

and reliable. *Pansier*, 576 F.3d at 737 (citing *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 147-49). As part of this duty, the Court must consider as a threshold matter "(1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

As to the reliability of the expert's proposed testimony, the Court must determine whether the expert is qualified in the relevant field and examine the methodology they used in reaching their conclusions. *Id.* Although extensive academic expertise in a particular area is important and relevant to the Court's function, the expert's experience and training should also be considered. *Id.* In addition, even if a proposed expert is qualified to testify about a given matter, his opinions must be based on sound methodology. *Id.* However, the Court's gatekeeping function focuses on the examination of the expert's methodology, not the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis. *Id.* Those matters are left to the jury to decide. *Id.*

Finally, as to relevance, the Court must consider whether the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The expert does not have to opine on the ultimate question to be resolved by the jury to satisfy this requirement. *Smith*, 215 F.3d at 718. Rather, an expert may offer a hypothetical explanation of the possible or probable causes of an event if it would aid the jury in its deliberations. *Id.* However, even the hypothetical proffered by the expert must have analytically sound bases to ensure it is not merely speculation by the expert. *Id.*

As to Whitman, Ford first asserts that Whitman is not qualified to testify as an expert in the field of vehicle design because he has never designed any component for a vehicle that was eventually sold to the general public. In addition, Ford claims that Whitman's testimony regarding alternative designs should be excluded as unreliable and not based on sufficient facts or data because he has not tested his proposed alternative designs. The Court disagrees on both accounts.

First, the Court concludes that Whitman's education, experience, and training as summarized in his report, particularly his experiences with the Army, satisfy Rule 702 requirement that he be an expert in the relevant field. *Smith*, 215 F.3d at 718; Dkt. No. 93-3 at 2-4.. The fact that he has not implemented a design that was put in a product sold to the general public is not dispositive; Whitman has substantial experience creating new designs for driver restraint systems and implementing those designs in Army vehicles. *See* Dkt. No. 93-3 at 2-4. Moreover, Green asserts that Whitman's testimony will demonstrate that his designs have been tested by other qualified professionals on other vehicles, including Ford's own models. Whitman is not required to personally test designs that other professionals have tested and on which those professional wrote reports. Therefore, Whitman is qualified in the relevant field and his opinions are based on sound methodology. Moreover, his testimony about the 1999 Explorer's restraint system, Ford's failure to adequately test that system, and potential alternative designs will assist jury in its determination on the ultimate issue. Therefore, Defendant's Motion to Exclude Whitman is **DENIED**.

As to Dr. Shanahan, a proposed expert biomechanic, Ford argues that Dr. Shanahan should not be allowed to opine on injury causation because he is not able to

identify when during the accident sequence Green's injury occurred. However, an expert may offer a hypothetical explanation of the possible or probable causes of an event if it would aid the jury in its deliberations. *Smith*, 215 F.3d at 718. The weight that should be given to Dr. Shanahan's opinions is an issue best left to the jury after direct and cross examination. Ford raises no other issues with Dr. Shanahan's credentials, nor does it assert that the methodology he used was otherwise flawed. After reviewing his report, which contains both a summary of his education, experience, and training and a description of the methodology he used, the Court concludes that Dr. Shanahan is qualified to testify as an expert. *See* Dkt. No. 93-6. Moreover, his testimony will assist the trier fact reach a decision on the ultimate issue. Therefore, Ford's Motion to Exclude Dr. Shanahan's testimony is **DENIED**.

## V. GREEN'S MOTION IN LIMINE

Green submitted a Motion in Limine with thirty-three numbered paragraphs. Each paragraph described certain topic areas the testimony and evidence of which Green seeks to withhold from the jury. Ford does not oppose ¶¶ 1, 3-5, 7-9, 11, 17-20, 22-24, 28-30, and 32. Therefore, as to the information described in these paragraphs, Green's Motion in Limine is **GRANTED**. Below the Court provides its rulings that correspond to the numbered paragraphs in Green's motion. To the extent the Court does not rule on any of the numbered paragraphs, the parties shall be prepared to discuss the issues with the Court at the Final Pretrial Conference.

    2.    **GRANTED**. Defendant may request leave from the Court should the need arise to discuss any of these topic areas.

6. **GRANTED**. *Knowles v. Murray*, 712 N.E.2d 1, 3 (Ind. Ct. App. 1999).

10. **DENIED**. *See Selby v. Lovecamp*, 690 F.Supp. 733 (N.D. Ind. 1988).

12. **DENIED**. Ind. Code § 34-20-5-1; *Schultz v. Ford*, 857 N.E.2d 977, 985 (Ind. 2006).

13. **GRANTED**. To the extent Green has made prior statements against interest, Ford can present the prior statement to the Court outside the presence of the jury.

14. **DENIED**. Ind. Code § 34-20-5-1.

15. **GRANTED**, except to the extent that the parties are entitled to present testimony that the Explorer was not made available to the experts, who may testify that the availability of the 1999 Explorer would have aided their analysis.

16. **GRANTED**. This sort of evidence is not relevant to a crashworthiness case. The Court concludes that the evidence contemplated by Indiana Code § 34-20-8-1 relates to the plaintiff's negligence with respect to his use of the allegedly defective product; for example, alteration or misuse.

21. **DENIED**. This is an inappropriate subject for a Motion in Limine.

26. **GRANTED**. This subject is not relevant.

27. **GRANTED**. This subject is not relevant.

31. **GRANTED**.

## VI. <u>FORD'S MOTIONS IN LIMINE</u>

Ford submitted thirteen numbered motions *in limine*. The Court rules on each motion by its corresponding number. The Court will hear argument on any motions *in limine* that remain pending at the Final Pretrial Conference.

1. **GRANTED**.

2. **GRANTED in part**. Green's witnesses may not testify regarding the subjective state of mind or intentions of Ford, its engineers, or its executives based on the contents of Ford Documents. However, Green's experts may explain the content of the documents if it will aid the jury.

3. **GRANTED**.

4. **GRANTED**.

7. **DENIED**, to the extent Green can establish that the technology and design tested in the Volvo models identified in the parties' pleadings were available before and during the manufacture of the 1999 Ford Explorer.

8. **GRANTED**. The statements identified in the pleadings are not admissions.

9. **GRANTED**.

11. **GRANTED**. The Court will decide the admissibility of this evidence during trial should Green attempt to impeach a witness with this evidence.

12. **GRANTED**, except to the extent that Green may rebut any presumption established under Indiana Code § 34-20-5-1.

### VII.  CONCLUSION

For the foregoing reasons,

- Plaintiff's Motion to Exclude Portions of Ford's Expert, Jeffery Pearson's, Opinions (Dkt. No. 82) is **GRANTED.**

- Plaintiff's Motion in Limine (Dkt. No. 136) is **GRANTED in part and DENIED in part**.

- Defendant's Renewed Motion to Dismiss (Dkt. No. 98) is **DENIED**.

- Defendant's Motion to Disqualify or, in the Alternative, to Exclude Testing Conducted by Plaintiff's Counsel (Dkt. No. 68) is **GRANTED in part and DENIED AS MOOT in part**.

- Defendant's Motion to Preclude or Limit the Testimony of Gary Whitman and Dennis Shanahan (Dkt. No. 85) is **DENIED**.

- Defendant's Motions in Limine (Dkt. Nos. 101, 105, 107, 119, 123, 127 and 130) are **GRANTED**.

- Defendant's Motion in Limine (Dkt. No. 103) is **GRANTED in part**.

- Defendant's Motion in Limine (Dkt. No. 115) is **DENIED**.

IT IS SO ORDERED this 29th day of April, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Todd Andrew Croftchik
SEIPP & FLICK LLP
TCroftchik@seippflick.com

Richelle Marie Harris
FROST BROWN TODD LLC
rharris@fbtlaw.com

James O. McDonald
EVERETT EVERETT & MCDONALD
jameso@mcdonaldlawoffice.com

Randall R. Riggs
FROST BROWN TODD LLC
rriggs@fbtlaw.com

Kevin C. Schiferl
FROST BROWN TODD LLC
kschiferl@fbtlaw.com

David Vaughan Scott Sr.
SCOTT, FORREST & BOURNE
dave@davescott.us